IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )   Chapter 7
ANDREW H. SCHRODEMIER,          )
                                )   Bankruptcy No. 04-04426
     Debtor.                    )

**ORDER RE U.S. TRUSTEE'S MOTION TO DISMISS
PURSUANT TO 11 U.S.C. § 707(b)**

The above-captioned matter came on for hearing on March 31, 2005 pursuant to assignment. Debtor Andrew H. Schrodemier appeared in person with his attorney, Michael Mollman. Attorney John Schmillen appeared for the U.S. Trustee. After hearing evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

The U.S. Trustee moves to dismiss this case for "substantial abuse" under § 707(b). The U.S. Trustee argues that Debtor has sufficient disposable income to fund a Chapter 13 plan. Debtor resists.

**FINDING OF FACT**

The parties stipulated at the commencement of trial that the amount of income contained in Debtor's Schedule I is incorrect. They stipulate that Debtor's disposable income is correctly stated as $2,274 per month. The U.S. Trustee's Exhibit 4 contains an analysis prepared by Glenn Swenson for the U.S. Trustee. These documents support the finding of $2,274 as the correct amount of disposable income per month.

Debtor Andrew Schrodemier testified regarding his finances. He testified that he is a single person residing in Cedar Rapids, Iowa. He testified that he has been employed at McLeod Industries as a drafter for approximately three years. His only income is his salary from McLeod. He testified that in June or July of this year he will get a two to three percent increase in salary.

The primary dispute in this matter concerns the reasonableness of Debtor's Schedule J.  Debtor submitted a Schedule J at the time of filing which stated that he had total expenses of $1,900 per month.  After the filing of the 707(b) motion by the U.S. Trustee's office, Debtor filed an Amended Schedule J on February 25, 2005.  The Amended Schedule J declares monthly expenses of $2,402.

Counsel explored the various items in Debtor's Amended Schedule J.  The first item involves Debtor's phone service. Debtor maintains both a cell phone as well as a land-line telephone in his home.  The total expenses per month for phone service is $100 per month.  Debtor estimates, of this total amount, approximately $60-$70 is attributable to the cell phone.  Debtor testified that, while it is convenient to have the cell phone, it is not a necessary component of his job.

Secondly, Debtor originally stated in his Schedule J that he spends approximately $275 per month on food.  This has now been amended to reflect food in the amount of $425 per month. Debtor indicated that he eats at least one meal outside the home each day.  He testified that he has no special dietary needs.  The U.S. Trustee pointed out that the $425 per month is in excess of guideline amounts.

Debtor testified concerning transportation expenses.  He stated that he has a 1990 Toyota Camry with approximately 160,000 miles.  He has now listed $400 per month as transportation expense.  He attributed $200 per month to gasoline and other essentials for the vehicle and attributed $200 per month for repairs on this older automobile.  However, Debtor has also added an item of $250 per month toward a new car.  This new car has not been purchased.  Debtor stated, however, that this may become necessary in the future.

Debtor now lists recreation expense of $150 per month. This consists of a gym membership, membership in the Jaycees, as well as, a volleyball league and other sport leagues.

A major component of Debtor's expense is student loans. Debtor attended Iowa State University and the University of Northern Iowa.  He has student loans of $28,000.  He apparently has an arrangement with the Department of Education that he pay $275 per month toward these student loans.  This has been going on for three or four years.  Debtor has made no payments toward these loans in the last four or five months.

2

The evidence does not reflect that Debtor has any dependents. There is nothing in the record to indicate that Debtor has any extraordinary health problems. Debtor has a total unsecured indebtedness of $23,600. Debtor's entire unsecured debt consists of seven credit cards with a total indebtedness of $23,600. Debtor testified that most of the credit card debt was incurred during his last years of college. Only one or two credit cards appear to have remained active after 2004.

## **CONCLUSIONS OF LAW**

Section 707(b) of the Bankruptcy Code provides that:

> the court, on its own motion, or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under [chapter 7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of [chapter 7]. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b). "Substantial abuse" is not a defined term. In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'" In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997); In re Walton, 866 F.2d 981, 983 (8th Cir. 1989). The Eighth Circuit has declined to adopt the "totality of circumstances" approach. In re Harris, 960 F.2d 74, 77 (8th Cir. 1992). A debtor's "substantial ability to pay creditors standing alone warrants dismissal of a Chapter 7 petition for substantial abuse." Koch, 109 F.3d at 1288; Harris, 960 F.2d at 76. Egregious conduct is not a required element of substantial abuse dismissal. Harris, 960 F.2d at 76.

The debts involved in this case are primarily consumer debts under § 707(b), including the debts secured by real estate. They were incurred primarily for a personal, family or household purpose.

For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding. Koch, 109 F.3d at 1288. Confirmation of Chapter 13 plans requires, if an objection to

confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is income not reasonably necessary for support of the debtors, debtors' dependents or debtors' business. 11 U.S.C. § 1325(b)(2). Evaluating Debtors' ability to fund a Chapter 13 plan necessitates a review of Debtor's disposable income.

## ANALYSIS

The parties are in agreement that Debtor has net disposable income of $2,274 per month. He lists expenses of $2,402 per month. The dispute in this case is whether some of Debtor's expenses are inflated and whether he retains sufficient disposable income to fund a Chapter 13 plan.

As indicated in the Findings of Fact, the U.S. Trustee's Office focused on the following of Debtor's expenses: telephone, food, transportation, recreation and the impact of Debtor's student loans.

The Court acknowledges that Debtor has a limited amount of income per month. However, this entire case consists of figures which are on a much more modest scale than many bankruptcies. Debtor is single and has only himself to support. Additionally, Debtor has $23,000 in unsecured debt which, by today's standards, is fairly modest. Therefore, an examination of certain of the expense items, which in another case might appear trivial, in this case could constitute a fairly substantial payout to unsecured creditors.

The Court concludes that Debtor has no present need for a cell phone. He has a phone in his home. Admittedly, a cell phone in today's world is a convenient item. However, for someone who is having difficulty balancing his expenses and who is presently in Chapter 7 bankruptcy, a cell phone is a luxury item. Secondly, it appears that Debtor has inflated, to some degree, his food expense. It was originally listed at $275 per month but is now listed at $425 per month. This number exceeds the guidelines which are ordinarily considered in this type of case. Debtor has added $250 to his expense ledger by now claiming automobile installment payments of $250. Debtor presently has no auto expense. This is an estimate based upon the fact that Debtor may need a newer car in the future. Additionally, Debtor has retained the $400

expense claim under transportation expense.  Presumably, if Debtor purchased a newer automobile, the $200 per month attributable to repairs should no longer exist.  Therefore, it appears to this Court that these numbers are overlapping.

Debtor has listed recreational expense of $150 per month. The law does not require an individual to live a completely Spartan lifestyle.  However, a certain amount of belt tightening under tight financial circumstances is not unreasonable.  While the sum of $150 per month for recreation is not extremely high, it is possible that Debtor may be able to limit to some degree the amount of recreational expense.

Finally, Debtor has student loans of approximately $28,000.  He is liquidating this debt at the sum of $275 per month though he has not paid for several months prior to filing.  The U.S. Trustee rightfully points out that, in a Chapter 13 plan, the $275 per month student loan would not be a monthly expense.  Rather, according to local procedure, payments towards these student loans would be held in abeyance during the term of the Chapter 13 plan.  Payments would be made toward the student loan, as an unsecured debt, pro rata with other unsecured debt.  Therefore, the $275 per month expense would not exist until completion of Debtor's Chapter 13 plan.

The Court concludes that Debtor does have sufficient disposable income within which to fund a Chapter 13 plan.  The $275 per month student loan payment will not exist during the course of this plan.  The $200 per month automobile repair expense will not exist or, alternatively, the $250 new car payment per month will not exist.  The cell phone contract can be terminated without any hardship to Debtor.  The food budget and recreation budget can be modestly reduced.  Based on these numbers, Debtor should have disposable income of between $500 and $600 per month to be applied toward creditor obligations. The Court need not determine an exact amount of plan payments. It is sufficient to determine that enough disposable income exists upon which to fund a plan.  Based upon the fairly conservative numbers drawn from this evidentiary record, Debtor should be able to pay into a plan somewhere between $18,000 and $21,000 during a normal 36 month plan.  Debtor's dischargeable unsecured indebtedness is $23,600.

It is the conclusion of this Court that the U.S. Trustee has shown that, without substantial change in Debtor's

lifestyle, a Chapter 13 plan can be proposed which makes a high percentage payment toward Debtor's unsecured indebtedness. As such, granting Debtor a Chapter 7 relief would be a substantial abuse of the Bankruptcy Code under § 707(b) and this case should be dismissed. In lieu thereof, Debtor will be provided the opportunity to convert to Chapter 13 prior to entry of dismissal.

    **WHEREFORE,** the U.S. Trustee's Motion to Dismiss is SUSTAINED.

    **FURTHER**, Debtor is given to and including April 20, 2005 to convert his case to Chapter 13 if he so wishes to do so.

    **FURTHER**, if Debtor does not convert to Chapter 13 by April 20, 2005, this case will be dismissed without further notice or hearing.

    Dated and Entered _____

    _____
    PAUL J. KILBURG
    CHIEF BANKRUPTCY JUDGE